**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3841-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

KELLY N. FOWLER,

    Defendant-Appellant.

_____

Submitted September 25, 2019 - Decided October 4, 2019

Before Judges Koblitz and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No.12-02-0576.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Kelly Fowler appeals from a February 22, 2018 order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant was convicted by a jury of second-degree arson, N.J.S.A. 2C:17-1(a)(1); third-degree burglary, N.J.S.A. 2C:18-2(a)(1); and third-degree criminal mischief, N.J.S.A. 2C:17-3(a). She was acquitted of attempted first-degree murder, N.J.S.A. 2C:5-1(a)(2) and N.J.S.A. 2C:11-3, and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). Defendant was sentenced to an aggregate term of eight years in prison, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, N.J.S.A. 2C:42-7.2. We affirmed. State v. Fowler, No. A-3860-13 (App. Div. May 10, 2016). Our Supreme Court denied certification. State v. Fowler, 227 N.J. 365 (2016).

Defendant raises the following issues on appeal:

> POINT I: THE PCR COURT ERRED WHEN IT FOUND DEFENDANT HAD FAILED TO ESTABLISH A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> A. TRIAL COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO REQUEST THE LESSER INCLUDED CHARGE OF THIRD-DEGREE ARSON.
>
> B. TRIAL COUNSEL'S FAILURE TO REQUEST AN INSTRUCTION ON CAUSATION AND NEGLIGENCE PREJUDICED HIS CLIENT'S RIGHT TO A FAIR TRIAL.

C. DEFENSE COUNSEL FAILED TO EFFECTIVELY PRESENT TIME DISCREPANCY EVIDENCE WHICH WOULD HAVE DEMONSTRATED IT WAS NOT FEASIBLE FOR DEFENDANT TO HAVE STARTED THE FIRE.

D. DEFENSE COUNSEL FAILED TO CHALLENGE [T.M.] ABOUT HER FALSE AND MISLEADING GRAND JURY TESTIMONY.

E. DEFENSE COUNSEL FAILED TO MOVE TO DISMISS THE INDICTMENT.

F. DEFENSE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO CHALLENGE THE VALIDITY OF THE ARREST WARRANT.

G. TRIAL COUNSEL FAILED TO OBJECT TO THE ADMISSIBILITY OF CERTAIN VOICEMAIL RECORDINGS.

H. APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO ARGUE THE TRIAL JUDGE'S CONDUCT DENIED DEFENDANT A FAIR AND RELIABLE TRIAL.

POINT II: AS THERE WERE GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.

Because defendant failed to demonstrate a prima facie case of ineffective assistance of counsel necessitating a plenary hearing, we affirm.

We review a judge's denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). A PCR petitioner must establish the grounds for relief by a "preponderance of the credible evidence." State v. Goodwin, 173 N.J. 583, 593 (2002). To sustain that burden, the "petitioner must do more than make bald assertions that he [or she] was denied the effective assistance of counsel." State v. Porter, 216 N.J. 343, 355 (2013) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). The petitioner must articulate specific facts that demonstrate counsel's constitutional deficiency. Ibid.

To succeed on a claim for ineffective assistance of counsel, a defendant must establish both prongs of the Strickland[1] test. State v. Parker, 212 N.J. 269, 279-80 (2012). Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Under the second prong, a "reasonable probability [must exist] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 583 (quoting Strickland, 466 U.S. at 694).

In reviewing claims for ineffective assistance of counsel, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all

---

[1] Strickland v. Washington, 466 U.S. 668, 687 (1984).

significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy." Fritz, 105 N.J. at 54 (1987) (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Nash, 212 N.J. 518, 543 (2013) ("The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness.").

We incorporate our statement of facts from our decision on direct appeal. Fowler, slip op. at 2-5. Defendant was convicted of starting an early morning fire on the front porch of the home of her former girlfriend.

## II.

Defendant takes issue with trial counsel's strategy to argue only her non-involvement and not her lack of intent to cause injury. Defendant argues that trial counsel's failure to seek a lesser guilty verdict on the basis of a lack of intent to cause harm constituted ineffective assistance of counsel. However, "an otherwise valid conviction will not be overturned merely because the defendant is dissatisfied with his or her counsel's exercise of judgment during trial." State v. Allegro, 193 N.J. 352, 367 (2008) (quoting State v. Castagna, 187 N.J. 293, 314-15 (2006)). Our Supreme Court explained that a reviewing court should defer to counsel's strategically defensible and tactical decisions, "[e]ven if

counsel made strategy miscalculations or trial mistakes." State v. Buonadonna, 122 N.J. 22, 42 (1991).

On direct appeal, we rejected defendant's arguments that the jury instructions were improper, discerning "no plain error in the trial court not sua sponte instructing the jury concerning recklessness, negligence, or accidental causes of the fire." Fowler, slip op. at 10. The PCR court described defense counsel's decision not to request instructions for third-degree arson, causation, and negligence as "an objectively reasonable strategy." The PCR court explained that under N.J.S.A. 2C:17-1 "[b]oth second- and third-degree [a]rson charges contain an element of an intentional setting of fire. The difference is whether the fire was set knowingly or intentionally to cause injury or it was set and could have recklessly caused injury."

During trial, the court discussed the lesser charge with counsel, but defense counsel and the judge concluded that under the asserted defense, the charge was not appropriate. The PCR court found "the issue of the consequence of that fire being known as opposed to being recklessly disregarded [had] no bearing on the defense of non-involvement." The PCR court stated:

> The fact that the trial counsel's strategy was ultimately unsuccessful is not dispositive and the Court's assessment of the trial counsel's performance will not be affected by the benefit of hindsight. Under the first

_Strickland_ prong, it was objectively reasonable for the trial counsel to argue that Fowler was not involved in starting the fire. Indeed, in support of this strategy, the trial counsel called two alibi witnesses. Moreover, the alibi defense was inconsistent with Fowler's now proposed strategy.

We agree with the PCR court that defense counsel's strategy was not constitutionally defective.

### III.

Defendant argues she was prejudiced by defense counsel's failure to address the improbability that she started the fire when the fire was reported at about the same time defendant was stopped by the police. On October 9, 2011, the morning of the fire, a defense witness testified that defendant was at a motorcycle race, which concluded at 4:30 a.m. Defendant's car was pulled over by the police about two minutes away from the scene of the fire at 4:40 a.m. The fire was reported at 4:42 a.m.

Defendant asserts that trial counsel should have argued more effectively that it was unlikely defendant started a fire at the victim's residence within the ten minutes of leaving the motorcycle race and before being stopped by the police.

Defense counsel, however, did make that precise argument in his closing argument, stating:

7

You remember [the investigator] stated this wasn't a smoldering fire, this wasn't a fire that smoldered. That was his determination. This fire was lit and caught up so you know it didn't smolder which would have given the time to say maybe the fire was smoldering, it gave her time. That's not what [the investigator] said.

[The investigator] said the opposite. If he said, yeah, you know the fire smoldered for a while before it caught up, maybe that would be an issue but that's not what he testified to. He testified that the fire did not smolder, went right up.

So how could they actually try and pin this case on Miss Fowler when the fire didn't smolder, went right up?

The door bangs, [the victim] is calling at 4:42. Miss Fowler is stopped at 4:40 after being followed all that way . . . Couldn't have been her.

Trial counsel thus discussed the time element.

<u>IV.</u>

Defendant argues defense "counsel's failure to confront [the victim] with her false sworn testimony before the [g]rand [j]ury was inexplicable." When the victim was asked before the grand jury about when and what kind of voicemails defendant left her, the prosecutor elicited the following testimony:

Q: And in these messages, did she -- well, did she tell you a lot of things, including that she loves you and also that she was going to get you?

A: Yes.

A-3841-17T1

Q: And did she threaten to kill you?

A: Yes.

Q: And in those messages, -- and was this in the first week or so of -- let me get the dates right here. I don't want to get them wrong --between the 7th of October and the 9th of October of last year?

A: Yes.

Q: And when Ms. Fowler left messages threatening to kill you, did you believe her?

A: Yes.

Although defense counsel did not directly confront the victim about her misleading testimony to the grand jury concerning the source of the October 7, 2011 voicemail she received, defense counsel did clarify for the jury that the voicemail was not from defendant, but rather an unidentified male.

Q: I represent to you that the message on October 7th was a male. The message that you provided was from a male, that's not Miss Fowler, correct?

A: The male referring to Miss Fowler, yes.

Q: That's not Miss Fowler correct?

A: That message was not Miss Fowler. It was a male referring to her.

Q: On October 7th, 8th, or 9th, you have no telephone message from Miss Fowler, correct?

9

A: Correct.

Thus, defense counsel did not fail to cross-examine the victim about who left the voicemail message on October 7. The fact that counsel failed to confront her with her misleading testimony before the grand jury was not significant.

## V.

In a related argument, defendant claims trial counsel should have moved to dismiss the indictment pretrial because the State failed to present exculpatory evidence to the grand jury regarding the male voice on the threatening voicemail the victim received on October 7, 2011. Also, defendant argues the fire investigator's grand jury testimony that the fire smoldered coupled with his trial testimony that it did not smolder before at trial mislead the grand jury.

Pursuant to Rule 3:10-2(c), the State has the opportunity to cure any irregularity or defect in the grand jury process any time before trial. State v. Simon, 421 N.J. Super. 547, 551 (App. Div. 2011). When an indictment is dismissed, the State has the right to bring a new indictment. Ibid. (citing State v. Womack, 145 N.J. 576, 590 (1996)).

As correctly noted by the State, ample evidence existed to sustain an indictment. The victim testified to the following at trial:

Q: Is it fair to say that you received messages from the defendant of all sorts like threatening messages I think you said?

A: Yes.

Q: Apologetic messages and messages that said what?

A: "I am going to get you." She expressed her anger. She would just make comment like "I am not going to stop until you pay. I am on everything, smoking." There is just a number -- I can't remember them all verbatim.

Q: Did you save them all?

A: I believe so -- no, I didn't save every single message.

Q: When did you start saving them?

A: In August.

Q: And between August and what date did you save them until approximately?

A: October.

The fact that the victim received a threatening voicemail from an unidentified male does not negate that defendant also left threatening voicemails. As to the investigator's testimony about the amount of time the fire burned, the length of time the fire smoldered would not negate probable cause. Even if defense counsel had successfully moved to dismiss the indictment,

11

sufficient probable cause existed for the State to re-present the matter to a new grand jury.

## VI.

Defendant argues defense counsel should have challenged her arrest warrant because it was "based on hearsay[] and deliberate falsehoods intrinsic to the facts of the alleged offense in question" and had defense counsel objected to its validity, "it was likely the court would have denied an arrest warrant for making terroristic threats." Our Supreme Court established that "for an arrest[] 'there must be probable cause to believe that a crime has been committed and that the person sought to be arrested committed the offense.'" State v. Brown, 205 N.J. 133, 144 (2011) (quoting State v. Chippero, 201 N.J. 14, 28 (2009)).

"[T]he appropriate remedy for an improper arrest is suppression of any evidence that may have been seized in connection with that arrest." State v. Egles, 308 N.J. Super. 124, 131 (App. Div. 1998). Defendant fails to demonstrate how her purportedly unlawful arrest affected her conviction. See Brown, 205 N.J. at 137 (discussing the validity of defendant's warrantless arrest in light of her post-arrest statements). Trial counsel was not ineffective by failing to challenge the warrant.

A-3841-17T1

Defendant argues defense counsel should have requested a pre-trial hearing to suppress the voicemails introduced by the State because they were edited and altered.  Pursuant to State v. Driver, 38 N.J. 255, 287 (1962), sound recordings are admissible if the speaker is identified and "(1) the device was capable of taking the conversation or statement, (2) its operator was competent; (3) the recording is authentic and correct; (4) no changes, additions or deletions have been made, and (5) in instances of alleged confessions, that the statements were elicited voluntarily and without any inducement."

The victim used a hand-held device to record the messages from her phone and testified she did not alter the recordings in any way.  She explained that some of the dates were inadvertently missing from the recordings.  The Driver standards were met and defense counsel had no basis to suppress the recordings.

VIII.

Defendant also argues appellate counsel was ineffective when he failed to argue that the trial judge denied defendant due process "by acting as a prosecutor [and] by inserting her own opinion in the case."  The standard of review for assessing ineffective assistance of appellate counsel is the same Strickland two-prong test that applies to ineffective assistance of trial counsel claims.  State v.

Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). Appellate counsel is not required to bring all non-frivolous claims or claims that are "legally unworthy of pursuit." State v. Webster, 187 N.J. 254, 256 (2006); see also State v. O'Neil, 219 N.J. 598, 613 (2014) (noting "appellate counsel does not have an obligation 'to advocate ad infinitum'") (internal citation omitted).

Defendant's argument regarding the bias of the trial judge is meritless. In defendant's first example regarding the date of the complaint, the trial judge explained on the record that she misread the document and defense counsel stated the correct date. In the second example, rather than questioning defense counsel's knowledge about the facts, the trial judge sought clarification of the timeline. In the third example, the colloquy occurred outside the presence of the jury. Appellate counsel had no obligation to bring this claim.

## VIX.

Finally, defendant argues that because "there was a genuine dispute of material facts, she was entitled to an evidentiary hearing on her various claims." A PCR judge has the discretion to grant such a hearing. State v. Jones, 219 N.J. 298, 311 (2014). We review this decision under the abuse of discretion standard. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). A defendant is entitled to an evidentiary hearing only when (1) he or she sets forth a prima facie case of

ineffective assistance of counsel; (2) the court determines "there are material issues of disputed fact that cannot be resolved by reference to the existing record"; and (3) the court determines "that an evidentiary hearing is necessary to resolve the claims for relief." R. 3:22-10(b). Because defendant failed to establish a prima facie case for ineffective assistance of counsel, an evidentiary hearing was not warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3841-17T1