# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1973-18

STATE OF NEW JERSEY

    Plaintiff-Respondent,

v.

SHARROD L. STUART,

    Defendant-Appellant.

_____

Submitted on December 16, 2020 - Decided February 19, 2021

Before Judges Sumners and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. 17-08-1003

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel V. Gautieri, Assistant Deputy Public Defender, of counsel and on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Edward F. Ray, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a bench trial, defendant was found guilty of third-degree arson and third-degree aggravated assault and was sentenced to an aggregate eight-year discretionary extended prison term, with a four-year period of parole ineligibility. Before us, he argues:

POINT I

THE COURT ERRED IN DENYING [DEFENDANT'S] MOTION TO DISMISS THE INDICTMENT BECAUSE THE PROSECUTOR MISCHARACTERIZED CRITICAL EVIDENCE, OMITTING EXCULPATORY EVIDENCE CONTAINED IN THE COMPAINANT'S STATEMENTS TO THE POLICE AND CASTING DOUBT UPON HER CREDIBILITY AT A PRE-TRIAL HEARING BY MISSTATING HER TESTIMONY.

POINT II

BECAUSE THE JUDGE CONCLUDED THAT [DEFENDANT] HAD NOT KNOWINGLY PLACED THE VICTIM IN DANGER OF INJURY OR DEATH, HE ERRED IN IMPOSING AN EXTENDED-TERM SENTENCE AND A PERIOD OF PAROLE INELIGIBILITY ON THE ARSON CONVICTION.

For the reasons that follow, we affirm.

A-1973-18

These facts are taken from the record. On May 22, 2017, T.P.[1] gave a statement to Detective Rager[2] of the Elmwood Park Police Department regarding an incident that day at her two-floor garden apartment in the Borough of Elmwood Park. She reported that she and defendant, her boyfriend, got into a heated argument and she asked him to leave. She then left to go grocery shopping. When she returned, defendant was still there. After she took a shower, defendant started yelling at her, and kicked a garbage can. T.P. went into her bedroom, and defendant walked towards her "real fast," forced her on the bed, and put his hands around her neck but did not choke her, and stated, "I love you, but I just want you to feel the anger that I feel . . . . I want you to feel the hurt that I feel." Defendant then left the room.

Defendant subsequently told T.P. he was going to his aunt's house. After he left the apartment, he placed bags[3] containing his belongings by the front door. Once defendant got outside, T.P. locked the door behind him, and he kicked her door. To get him to stop kicking the door, she opened the door and

---

[1] We refer to the victim by her initials. Rule 1:38-3(c)(12).

[2] The record does not indicate the detective's first name.

[3] Backpacks and duffle bags.

told him, "look what you did to my door." She then closed and locked the door and went upstairs.

T.P. told Detective Rager that when she went upstairs, she heard her window shatter and she called the police. She then heard her neighbor yelling, and when she went to talk to her, she saw defendant's belongings on fire blocking the front door. T.P. called the police again to report that defendant lit a fire at her apartment's front door, and he was getting away.

Six days later at defendant's May 30 pretrial detention hearing, T.P. recanted portions of her statement to Detective Rager. She testified that defendant did not apply pressure to her neck; he only had her hands around her neck because he fell on top of her in self-defense She also testified that she was shouting at defendant, and he "was [not] really yelling" but there was "shouting back and forth." When asked why she changed her testimony, she stated, "[b]ecause I, basically, lied. I, basically, lied and I felt horrible. I felt bad about it. I lied." She also mentioned that she attempted to amend her statement before the hearing, but no one was available to speak with her, so she emailed the Prosecutor's Office stating her desire to change her statement. Defendant was detained pending his trial.

 A-1973-18

At the August 3 grand jury hearing, the State only presented one witness, Bergen County Prosecutor's Office Detective Michael Guzman, who testified regarding T.P.'s accusations. He acknowledged to the presenting prosecutor that at the pretrial detention hearing T.P. "largely recanted most of what she said" to him during his investigation following her calls to the police. When one of the grand jurors asked the prosecutor why T.P. recanted her testimony, he responded:

> . . . I cannot and nor should you speculate on facts that are not necessarily before you.
>
> I've provided you with both versions of the testimony. . . .
>
> As the grand jury it's your duty to determine based on that evidence whether or not there's probable cause, meaning whether it's more likely than not that [defendant] has committed the crimes of aggravated arson, arson, and aggravated assault . . . on the domestic violence victim.

Defendant was indicted for second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(1), third-degree arson, N.J.S.A. 2C:17-1(b), and third-degree aggravated assault on a domestic-violence victim, N.J.S.A. 2C:12-1(b)(12).

On May 14, 2018, the trial judge denied defendant's motion to dismiss his indictment. The judge rejected defendant's argument that the State failed to establish the proofs necessary to sustain the elements of aggravated arson, and

A-1973-18

that there was prosecutorial misconduct by failing to present exculpatory evidence that T.P. recanted her allegation of assault and that the gasoline can was found in T.P.'s possession.

During the four-day bench trial in October 2018, defendant represented himself with the assistance of standby counsel. At the trial's conclusion, the judge determined the State's witnesses were credible, including T.P., "although she attempted to minimize defendant's action." The judge acquitted defendant of second-degree aggravated arson and found him guilty of third-degree arson and third-degree aggravated assault.

II

We first address defendant's contention that the trial judge erred in denying his motion to dismiss the indictment based upon prosecutorial misconduct, which denied him fundamental fairness and due process, and infringed upon his State constitutional right to an impartial grand jury. Because the judge, acting as factfinder, and found defendant guilty, any alleged procedural deficiencies in the grand jury hearing were rendered harmless. See U.S. v. Mechanik, 475 U.S. 66, 70 (1986); State v. Simon, 421 N.J. Super. 547, 551 (App. Div. 2011) ("[A] guilty verdict is universally considered to render error in the grand jury process harmless."); State v. Cook, 330 N.J. Super 395,

411 (App. Div. 2000) (holding prosecutor's failure to present exculpatory evidence to the grand jury was rendered harmless by guilty verdict).

In examining the record, we detect, as did the judge, no prosecutorial misconduct before the grand jury. The judge stated:

> I don't find that [the Assistant Prosecutor] or the State's conduct in any way interfered with the grand jury's decision making capabilities in providing his comments to the grand jury or providing whatever information was provided. I, also, don't find that any evidence which the defense alleges was not provided to the grand jury would be clearly exculpatory, either on the arson grounds or on the aggravated assault issue.

The record indicates that the grand jury was given an accurate account of T.P.'s police statement and pre-trial detention hearing testimony. There was no indication the State argued that T.P.'s recantation testimony was not credible. The State did not fail to present any exculpatory evidence. See State v. Hogan, 144 N.J. 216, 236 (1996) ("[T]he State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.'"). Defendant admitted he started the fire, and the neighbor said she saw him start it.

The State informed the grand jury that T.P. recanted her initial statement that defendant choked her and did not try to dissuade the jury from believing her recantation. Considering the grand jury was provided T.P.'s statement regarding

defendant's mere placement of his hands around her neck, the grand jury's decision-making process regarding the element of causing significant bodily injury and the aggravated assault charge was not tainted by the State's characterization of the assault as a "strangulation." There was no prosecutorial misconduct that affected the grand jurors' ability to make an informed decision as to whether to indict. See Hogan, 144 N.J. at 229 (citing State v. Murphy, 110 N.J. 20, 35 (1988)) (noting indictment may be dismissed if misconduct infringes on grand jury's decision-making function). Accordingly, the judge did not abuse his discretion and there is no basis to reverse the denial of defendant's motion to dismiss the indictment. See State v. Zembreski, 445 N.J. Super. 412, 424 (App. Div. 2016).

## III

Defendant asserts that his sentence was excessive. He contends the trial judge failed to apply the correct legal standard in sentencing him to an extended term by relying on State v. Dunbar, 108 N.J. 80 (1987), instead of State v. Pierce, 188 N.J. 155 (2006), which revised the Dunbar standards. He argues that in Pierce, our Supreme Court held that under the Sixth Amendment, a defendant's eligibility for a discretionary extended term must not be based upon anything other than the fact of prior convictions. Pierce, 188 N.J. at 158, 167-68. Yet,

he maintains that although Dunbar's four-factor analysis no longer applies, its considerations are still applicable in fashioning a sentence. Defendant contends the judge, however, misapplied Dunbar by stating that the second factor for determining the propriety of an extended term is to consider "whether it's a deterrent to impose an extended term." The judge should have instead considered whether an enhanced sentence was necessary to protect the public. Dunbar, 108 N.J. at 90. Defendant also asserts the judge double-counted aggravating factor nine, the need to deter, by including it in the calculations leading to an extended term and when he imposed "a sentence higher than the midpoint of the range and in imposing a [four-year] period of parole ineligibility." We are unpersuaded.

The trial judge granted the State's motion to impose an extended term sentence, N.J.S.A. 2C:44-3(a), on the arson charge because defendant was a persistent offender. The judge applied aggravating factors: one, "the nature and circumstances of the offense"; three, "[t]he risk that the defendant will commit another offense"; six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted"; and nine, "the need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1(a)(1), -1(a)(3), -1(a)(6), -1(a)(9). The judge applied mitigating factors:

9

eight, "conduct was the result of circumstances unlikely to occur[,]" and nine, "unlikely to commit another offense." N.J.S.A. 2C:44-1(b)(8), -1(b)(9). The judge found the aggravating factors were determined to substantially outweigh the mitigating factors. Accordingly, defendant was sentenced to an extended prison term of eight years with four years of parole ineligibility.

As for the aggravated assault conviction, the judge also applied aggravating factors one, three, six, and nine. He found that only mitigating factor nine applied. The aggravating factors were determined to outweigh the mitigating factors. The judge imposed a four-year prison term concurrent to the arson conviction.

There is no merit to defendant's assertion that the trial judge failed to apply the correct legal standard to sentence him to an extended term as a persistent offender. Defendant is eligible for a discretionary extended term as a persistent offender based on his eight prior convictions for: first-degree carjacking; fourth-degree aggravated assault with a firearm; second-degree possession of a firearm for an unlawful purpose; fourth-degree unlawful possession of a firearm; second-degree resisting arrest/eluding motor vehicle operation-risk of death/injury to another person; and third-degree burglary.[4] See N.J.S.A. 2C:44-

---

[4] Defendant was convicted three times for third-degree burglary.

A-1973-18

3(a).  While the State acknowledges the judge may have misinterpreted <u>Dunbar</u>'s second step, the extended term comported with <u>Pierce</u>.  The judge did not abuse his discretion as the eight-year sentence was within the extended range and his weighing of the sentencing factors was reasonable and supported by credible evidence in the record.  <u>See</u> <u>Pierce</u>, 188 N.J. at 169.

Furthermore, there was no impermissible double-counting of aggravating factor nine as defendant argues.  A sentencing court must avoid "double-counting" facts that establish the elements of the relevant offense in making that determination.  <u>State v. Fuentes</u>, 217 N.J. 57, 74-75 (2014).  Aggravating factor nine is intended  to deter the public and the defendant.  <u>Id.</u> at 70.  Defendant's act of setting fire in front of the only ingress/egress of T.P.'s apartment was properly considered by the judge in imposing an extended term sentence.

We also reject defendant's contention that the judge erred in imposing a four-year parole bar because the prosecutor requested a flat sentence and a parole bar was not mandatory for a discretionary extended term.  We agree with the State that in accordance with <u>State v. Hess</u>, 207 N.J. 123, 151 (2011), the judge has the discretion to impose a sentence within our sentencing guidelines and is not bound by the State's recommendation.  There was no abuse of discretion in the judge's determination that based upon the nature of the offense

11

and defendant's criminal record, the aggravating factors substantially outweighed the mitigating factors to warrant a period of parole ineligibility. See Fuentes 217 N.J. at 73; Dunbar, 109 N.J. at 92-93.

Lastly, defendant argues the trial judge improperly weighed aggravating factor one, as he found that he was not guilty of aggravated arson on the basis that he did not purposely or knowingly place T.P. in danger of injury or death but rather he had acted recklessly with regard to the consequences of starting a fire. Defendant maintains aggravating factor one only applies when a defendant's actions reveal an "extraordinary brutality," and his actions did not rise to the level of calculated intent necessary to inflict an injury. See Fuentes, 217 N.J. 57, 75 (2014); State v. O'Donnell, 117 N.J. 210, 217-18 (1989); State v. Carey, 168 N.J. 413, 425-26 (2001); State v. McGuire, 419 N.J. Super 88, 159 (App. Div. 2011). Defendant also contends, despite finding T.P. provoked him by pouring gasoline on his clothing, the judge failed to weigh mitigating factor three, "acted under a strong provocation[,]" N.J.S.A. 2C:44-1(b)(3), which caused the judge to find that the aggravating factors outweighed the mitigating ones. State v. Dalziel, 182 N.J. 494, 504-05 (2005) (holding that where mitigating factors are supported by the record, they "must be part of the deliberative process"). We are unpersuaded.

The judge's factual findings and consideration of the sentencing factors are based on credible evidence in the record.  See State v. Bolvito, 217 N.J. 221, 228 (2014).  Although T.P. poured gasoline on defendant's belongings and may have been the initial aggressor after breaking up with defendant, it was defendant who intentionally set the fire creating a serious threat to the safety of T.P. and residents of the apartment complex, as well as to property damage. Under these circumstances, defendant's extended term sentence and parole bar do not shock the judicial conscience.  See ibid.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1973-18